UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 2:22-CR-101 |
| v. | ) | JUDGE GREER |
| KRISTA CHEYENNE BOOKER | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, KRISTA CHEYENNE BOOKER, and the defendant's attorney, Cameron Hyder, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) Count One, conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A).

    The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a maximum fine of $10,000,000.00, a minimum of 5 years up to life on supervised release, and a $100 mandatory assessment fee.

2. There are no remaining counts in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case.

*KB*

Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a.) On September 4, 2018, officers responded to the Super 8 Motel in Kingsport, TN in reference to a complaint of foot traffic in and out of room 206. Occupants of the room at the time were defendant Krista BOOKER, co-defedant Dionna FREEMAN, and three other individuals. Pursuant to a consent search of the room, officers seized approximately 25 grams of methamphetamine, drug paraphernalia, a Bryco Arms 9mm handgun (S/N 1357100) with ammunition and a Winchester shotgun (S/N L1302266). FREEMAN and two other individuals were arrested on outstanding warrants, but no one was arrested for the drugs and guns as ownership could not be proven.

b.) On July 1, 2019, a co-conspirator (hereinafter "C-1") was interviewed subsequent to his arrest in possession of approximately two (2) pounds of methamphetamine. C-1 stated that approximately six weeks prior, he began making trips from Atlanta, Georgia, to Kingsport, Tennessee. C-1 stated that he stayed at the Red Roof Inn or EconoLodge in Kingsport until the methamphetamine was sold. C-1 stated that he started out driving smaller amounts of methamphetamine, but on the last few trips, he brought the same amounts as he had this time (approximately 2 pounds.) C-1 stated that upon his arrival in Kingsport, he paid for a motel room and notified customers that he had arrived. C-1 named four individuals to whom he regularly distributed methamphetamine while in Kingsport including "Krista" (defendant Krista BOOKER) and "Parker" (co-defendant Christopher PARKER). At the direction of law enforcement, C-1 placed recorded telephone calls to "*Krista*" on (423) 251-9824, and "*Parker*" on (423) 482-5218. Both subjects answered and acknowledge C-1 when he told them that he was on his way.

*KB*

c.) On September 20, 2019, a co-conspirator (hereinafter "C-2") was interviewed pursuant to a proffer agreement and provided information on his methamphetamine supplier, Brandon HOLLINS. C-2 stated that in May 2019, HOLLINS provided C-2 with a Dodge Nitro with which to return to Northeast Tennessee. C-2 stated that he brought up 10 ounces of methamphetamine, supplied by HOLLINS, and stayed at the Super 8. C-2 stated that a white female named "Crysta" (believed to be defendant Krista BOOKER) helped him sell the methamphetamine.

d.) On June 26, 2020, co-conspirator (hereinafter "C-3") was interviewed following his arrest in possession of 24 grams of methamphetamine. C-3 stated that the methamphetamine with which he was arrested had been purchased from "Rayshine" (co-defendant Brandon HOLLINS). C-3 stated that he had observed "Rayshine" drop off a "Hello Kitty" backpack full of methamphetamine to Krista BOOKER.

e.) On November 13, 2020, a co-conspirator (hereinafter "C-4") was interviewed pursuant to a proffer agreement. C-4 stated that "CT" (CALVIN ALLEN) was bringing methamphetamine from Atlanta, GA to Kingsport, TN for BRANDON HOLLINS. C-4 stated that he met HOLLINS through KRISTA BOOKER, who met him through ALLEN. C-4 stated that he and BOOKER met with HOLLINS at the Americourt in Kingsport, TN where they smoked high quality marijuana together. C-4 stated that in April 2018, he was with BOOKER when she purchased ¼ pound of methamphetamine from another co-conspirator, which was supplied by HOLLINS.

f.) On January 25, 2021, DEA agents obtained the contents of BOOKER's Facebook Account #100046336873473 through a search warrant. Agents found messages from April 23, 2020 to October 2020 between BOOKER and an account believed to belong to co-

defendant CALVIN ALLEN, JR. (User name "Rrg LilCal"). The messages indicate that BOOKER helped ALLEN sell methamphetamine.

g.  On August 11, 2022, BOOKER was Mirandized and interviewed while in custody at the Sullivan County Jail. BOOKER stated among other things that she began getting meth directly from ALLEN in 2019 or 2020. BOOKER obtained a quarter (1/4) pound of meth from ALLEN every week, for approximately eight or nine months.

BOOKER met "Rayshine" (co-defendant Brandon HOLLINS) when ALLEN went to jail in Atlanta. [ALLEN's criminal booking records show an arrest for probation violation in March of 2019.] BOOKER said she was messaging ALLEN's Facebook account and arranged to purchase two (2) ounces of meth from ALLEN at Americourt hotel in Kingsport, Tennessee, but was met by HOLLINS instead. HOLLINS told BOOKER he was ALLEN's cousin, and that his name was "Rayshine". BOOKER purchased the two ounces of meth from HOLLINS. BOOKER purchased meth directly from HOLLINS five (5) or six (6) times after she purchased the two ounces. BOOKER obtained between two (2) to three (3) ounces of meth from HOLLINS on each purchase. HOLLINS would direct BOOKER to a hotel to get meth and BOOKER met with a co-conspirator instead of HOLLINS. BOOKER obtained meth from HOLLINS until she introduced her uncle, Christopher PARKER, to HOLLINS  BOOKER did not deal with HOLLINS after introducing him to PARKER, but did get meth from PARKER while he was supplied by HOLLINS. After PARKER was arrested, BOOKER got meth from Claude MOSLEY. After MOSLEY was arrested, BOOKER started being supplied by ALLEN again. BOOKER said that in 2021, she purchased meth from ALLEN at the hotels on Airport Parkway two (2) or three (3) times. BOOKER and PARKER traveled to Atlanta to get meth from ALLEN. BOOKER said that ALLEN charged a higher price than what they had agreed on, and they only purchased two

*KB*

(2) ounces. BOOKER stopped dealing with ALLEN after he sold her fake meth. The last time BOOKER spoke with ALLEN was in March of 2022.

After ALLEN, BOOKER purchased meth from another source of supply. BOOKER would purchase two (2) ounces of meth a week from this source at a price of $300.00 per ounce. BOOKER sold meth up to her arrest on August 9, 2022.

    h.) During the course of the conspiracy, BOOKER agreed with at least one other individual to distribute methamphetamine. BOOKER distributed and is responsible for at least 50 grams of actual methamphetamine.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a)    The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b)    The Court will impose special assessment fees as required by law; and

    c)    The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

    d)    Pursuant to Rule 11(c)(1)(C) and for the purposes of this plea agreement, the parties agree that the defendant entered a conspiracy to distribute and is accountable for a conservative estimate of at least 500 grams but less than 1.5 kilograms of actual methamphetamine.

    e)    Pursuant to Rule 11(c)(1)(C) and for the purposes of this plea agreement, the parties agree that the 2-level enhancement for possession of a firearm under USSG §2D1.1(b)(2) shall NOT apply in this case.

*KB*

7.  Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8.  The defendant agrees to pay the special assessment in this case prior to sentencing.

9.  Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and

KB

counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

 a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

 b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

 c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute

KB

the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms  If additional terms are included in the supplement, they are hereby fully incorporated herein.

*ICB*

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON, III
UNITED STATES ATTORNEY

1/10/23
Date

By: _____
EMILY M. SWECKER
Assistant United States Attorney

12-6-22
Date

_____
KRISTA CHEYENNE BOOKER
Defendant

12-6-22
Date

_____
CAMERON HYDER
Attorney for the Defendant